UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTO CASANOVA,                              No. 10-13950

                    Plaintiff,                 District Judge Marianne O. Battani

v.                                             Magistrate Judge R. Steven Whalen

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

                    Defendants.
_____ /

## REPORT AND RECOMMENDATION

On October 4, 2010, Plaintiff Roberto Casanova, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, naming as Defendants the MDOC, Correctional Medical Services ("CMS"), and three doctors, Dr. Scott Holmes, Dr. Ivens and Dr. Mathai.  Before the Court at this time is the MDOC's Rule 12(b) Motion for Dismissal [Doc. #14], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Although ordered to file a response by February 24, 2011, the Plaintiff has not done so to date. For the reasons discussed below, I recommend that the motion be GRANTED, dismissing claims against the MDOC.

I further recommend that the Court *sua sponte* dismiss claims against Defendant Dr. Scott Holmes, pursuant to Fed.R.Civ.P. 12(b)(1).

## I.    FACTS

The following facts are taken from the Plaintiff's complaint.  The Plaintiff injured his left knee on December 29, 2006, while he was housed at the Bellamy Creek Correctional Facility in Ionia, Michigan. *Complaint*, ¶¶ 1-2. Two days later, he was seen by a nurse, who provided an Ace bandage wrap and a 24-hour ice detail.  Several days later, the Plaintiff was seen by Dr. Holmes, who issued crutches, ordered a proper knee brace, and put him on a three-day ice detail with a "no work" restriction.  Dr. Holmes also scheduled a follow-up appointment for two weeks later. *Id.* ¶ 3.

On March 7, 2007, Dr. Holmes requested a consult with an orthopedic surgeon to "rule out meniscal injury, ACL tear." Defendant CMS did not authorize the consult, but Dr. Ivens of CMS recommended a "new MRI to determine if surgical issue is present after latest injuries...." *Id* ¶ 4. Dr. Holmes then requested an MRI of the Plaintiff's left knee, which was performed by an orthopedic surgeon on April 25, 2007. *Id*. ¶ 6.

On June 5, 2007, Dr. Holmes again requested that Plaintiff be referred for an orthopedic consultation, but Dr. Mathai of CMS rejected that request on October 22, 2007. *Id*. ¶ 7. Dr. Holmes appealed CMS's decision, stating, "I think it's reasonable to get him into the orthopedist in that he really does appear to be dependent on the crutches, he's got two major problems with the left knee, ACL tear and now meniscal tear...." Nevertheless, Dr. Ivens, the CMS reviewer, denied an orthopedic consultation. *Id*. ¶ 8.

On March 5, 2008, Dr. Holmes again requested an orthopedic consultation, and this time Dr. Mathai approved the request, authorizing a consultive exam with Dr. Nirm Ikrim. *Id*. ¶ 10. Dr. Ikrim examined the Plaintiff on April 10, 2008, recommending a brace for six months, "partial menisclar debridement, and surgical replacement of the ACL in the left knee." *Id*. ¶ 11. Dr. Holmes requested that the surgery be performed, and on June 30, 2008, Dr. Ikram in fact performed arthroscopic surgery. Plaintiff states that the "MDOC did not want to pay for the major surgery, opting for the lesser costing arghroscopic procedure which had nothing to do with the ACL." He further states that "rather than repairing the damaged ACL, it was debrided (severed)." *Id*. ¶¶ 12-13. The Plaintiff followed up with Dr. Ikrim on August 14, 2008, and was recommended three weeks of physical therapy. Plaintiff made "numerous visits" to the physical therapist. *Id*. ¶¶ 16, 18.

During this time, the Plaintiff developed a problem with his right knee. On October 27, 2008, Dr. Holmes requested an MRI of the right knee, which Dr. Ikram performed in November of 2008. On March 9, 2009, Dr. Ikrim performed arthroscopic surgery on Plaintiff's right knee. *Id*. ¶¶ 19-21.

In the "Conclusion" section of his complaint, the Plaintiff challenges the decision to surgically debride, or sever, rather than repair the ACL of his right knee on June 30, 2008,

characterizing this as the "gravamen of this complaint." *Id*. p.7. As to Dr. Holmes, the Plaintiff states:

> "Dr. Holmes was further indifferent to Plaintiff's [medical] needs by failing to appeal the decision of the CMS doctors to the MDOC. Although he tried to request the necessary treatment, he was ineffective in the treatment of Plaintiff's day-to-day needs, and did not pursue every possible avenue to obtain the necessary treatment." *Id*.

On January 25, 2011, this Court ordered Plaintiff to respond to the MDOC's motion by February 24, 2011 [Doc. #19]. The Plaintiff has not done so.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).

In two recent cases, the United States Supreme Court altered the standard for determining whether a complaint is subject to dismissal under Fed.R.Civ.P. 12(b)(6). In In *Bell Atlantic Corp. V. Twombley*, 550 U.S 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2),[1] held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, 127 S.Ct. at 1964-65 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 1974.

---

[1] Rule 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

In *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937,__L.Ed.2d__ (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*.[2] First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, 129 S.Ct. At 1949, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 129 S.Ct. at 1950 (internal citations omitted).

## III.   DISCUSSION

### A.   Eleventh Amendment Immunity

The MDOC argues first that as an agency of the State of Michigan, it is immune from suit. Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). The MDOC is a state agency, and is therefore entitled to sovereign immunity from Plaintiff's suit for monetary damages. *See Turnboe v. Stegal,* 324 F.3d 1270, 2000 WL 1679478, at * 2 (6th Cir.2000) ("the MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity").[3]

---

[2] *Twombley* was an antitrust case. *Iqbal* was a prisoner civil rights case. In any event, it is clear that the *Iqbal* standard is applicable to all 12(b)(6) motions.

[3] The Plaintiff's claim for prospective injunctive relief, as opposed to his claim for monetary damages, is not subject to dismissal on the basis of sovereign immunity. "[I]mmunity does not apply if the lawsuit is filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst v. Rising,* 427 F.3d 351, 358 -359 (6th Cir. 2005). However, the claim for injunctive relief is dismissible on the merits. *See* Section B, *infra*.

## B.    Deliberate Indifference

The Plaintiff's claims revolve around what he alleges was deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. Apart from the question of the MDOC's sovereign immunity, the Plaintiff's complaint fails on its merits because he has failed to set forth a plausible Eighth Amendment claim.[4]

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a  prescribed plan of treatment, or a delay in medical treatment.  *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation.  *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra,* 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

---

[4] Because the Plaintiff's case fails on the merits, and on the basis of sovereign immunity as to his claim for monetary damages, it is unnecessary to discuss the MDOC's third argument for dismissal based on *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)(holding that §1983 liability cannot be based on a theory of *respondeat superior*, or mere supervisory liability).

Plaintiff meets the objective prong of the test in that he had a sufficiently serious medical condition.  However, his case falters on the subjective prong. Even drawing all inferences in the Plaintiff's favor, it cannot be said that the medical personnel employed by the MDOC disregarded his condition or placed him at substantial risk. By his own admission, he was examined and treated numerous times for complaints regarding both knees.  The treatment ranged from bandaging and ice regimens, to diagnostic testing such as MRI's, to two arthroscopic surgeries and physical therapy. While the Plaintiff might believe that surgical repair of the right ACL would have been preferable to the debriding performed by Dr. Ikram, this Court is not entitled to second-guess medical decisions as a matter of constitutional law. *Westlake, supra.* At best, Plaintiff might have a state law claim for medical malpractice. *Id.*; *Sanderfer v. Nichols, supra. See also Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Under the constitutional standard, the test is not whether the Plaintiff received optimal care, but whether the MDOC's medical providers were deliberately indifferent. They were not.

Finally, the Plaintiff seeks prospective injunctive relief against the MDOC, in the form of the Court ordering specific modalities of treatment.  *Complaint*, p. 9.  While this claim, unlike the request for monetary damages, is not defeated by Eleventh Amendment immunity, *see Ernst v. Rising, supra*, the complaint does not set forth a plausible basis on which to grant injunctive relief. As discussed above, the Plaintiff has not been denied medical care, and he has done nothing more than state his disagreement with the medical decision that have been made and his doubt as to their efficacy. It is not for this Court to micro-manage the medical care that the MDOC provides to this specific inmate. "[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped." *Bruce v. Ylst*, 351 F.3d 1283, 1290 (9th Cir.2003). To be sure, the public has an interest both in ensuring that prison inmates are afforded their constitutional rights, and also in having a well-regulated and operated prison system. And, the MDOC has an interest in promulgating and enforcing prison regulations, including reasonable rules

-6-

involving prisoner health care and prison discipline. By granting injunctive relief in this case, the Court would be in the untenable position of second-guessing and countermanding Defendant's medical decisions, with no input from the MDOC. Departments of Corrections are accorded considerable latitude in the administration of state prisons. In *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 227, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), the Supreme Court discussed the balancing of constitutional rights afforded prisoners against the deference that prison officials must be given in the efficient management of prisons: "Because the realities of running a penal institution are complex and difficult, we have also recognized the wide-ranging deference to be accorded the decisions of prison administrators." Again, this Court is ill-equipped to unilaterally micro-manage prison administration, particularly the clinical decisions of the MDOC's medical providers. *Bruce v. Ylst, supra.*

For these reasons, the complaint should be dismissed with prejudice as to all claims against the MDOC.

### C.   Dr. Holmes

The present motion was filed by Defendant MDOC. However, a review of the allegations in the complaint show that Defendant Dr. Scott Holmes should be *sua sponte* dismissed as frivolous.

A Court may dismiss a frivolous complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). "[A] district court may, at any time, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). A case is frivolous if it lacks arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

The Plaintiff alleges Eighth Amendment deliberate indifference against Dr. Holmes. He claims that Dr. Holmes "was clearly not concerned with the pain from which the Plaintiff was suffering, the lack of sleep, and the inability to walk." *Complaint*, p. 7. He further states, "Although he tried to request the necessary treatment, he was ineffective in the treatment of Plaintiff's day-to-

day needs, *and did not pursue every possible avenue to obtain the necessary treatment*." *Id.* (Emphasis added).

Yet, the factual allegations in the complaint tell a different story. Dr. Holmes examined the Plaintiff days after the initial 2006 knee injury. He provided treatment, and scheduled a follow-up exam, after which he requested a consult with an orthopedic surgeon. While CMS initially failed to authorize an orthopedic consult (through no fault of Dr. Holmes),[5] an MRI was performed, and eventually, through Dr. Holmes' efforts, the Plaintiff was seen by an orthopedist, Dr. Ikrim.[6] Based on Dr. Ikrim's evaluation, Dr. Holmes requested that arthroscopic surgery be performed, and the Plaintiff in fact underwent two such surgeries, one on each knee.

For the reasons discussed in Section III-B, *supra*, the facts alleged by the Plaintiff simply do not state a plausible claim for relief based on a theory of Dr. Holmes' deliberate indifference to his medical needs. To the contrary, Dr. Holmes paid close attention to the Plaintiff's medical condition, and appears to have been his strongest medical advocate. He was not constitutionally required to "pursue every possible avenue to obtain the necessary treatment." Because the Plaintiff's claim against Dr. Holmes has no basis in fact, and is defeated by the Plaintiff's own admission of facts, Dr. Holmes should be *sua sponte* dismissed under Fed. R. Civ. P. 12(b)(1).

## IV. CONCLUSION

I recommend that Defendant MDOC's Rule 12(b) Motion for Dismissal [Doc. #14] be GRANTED, dismissing claims against the MDOC with prejudice.

I further recommend that the Court *sua sponte* dismiss claims against Defendant Dr. Scott Holmes, pursuant to Fed. R. Civ. P. 12(b)(1).

---

[5] I make no finding as to whether CMS or its physicians could be found to have been deliberately indifferent as a result of delay in authorizing treatment.

[6] Plaintiff's allegation that Dr. Holmes "fail[ed] to appeal the decision of the CMS doctors to the MDOC" is not entirely accurate. At ¶ 8 of the complaint, Plaintiff concedes that Dr. Holmes did appeal CMS's October 22, 2007 rejection of his request for an orthopedic examination.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. StevenWhalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: June 8, 2011

---

### CERTIFICATE OF SERVICE

I hereby certify on June 8, 2011 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 8, 2011: **Roberto Casanova.**

s/Michael E. Lang
Deputy Clerk to
Magistrate Judge R. Steven Whalen
(313) 234-5217