UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTO CASANOVA, #241866   Case No. 10-13950

      Plaintiff,   District Judge Marianne O. Battani

v.   Magistrate Judge R. Steven Whalen

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

      Defendants.
_____/

**REPORT AND RECOMMENDATION**

On October 4, 2010, Plaintiff Roberto Casanova, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, naming as Defendants the MDOC, Correctional Medical Services ("CMS"), and three doctors, Dr. Scott Holmes, Dr. Ivens and Dr. Mathai. The MDOC and Dr. Holmes have been dismissed [Doc. #25]. Before the Court at this time are a Motion to Dismiss [Doc. #33] and a Motion for Summary Judgment [Doc. #35] filed by Dr. Ivens, Dr. Mathai, and CMS, which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the Motion for Summary Judgment [Doc. #35] be GRANTED, and that the Motion to Dismiss [Doc. #33] be DENIED AS MOOT.

**I.   FACTS**

The following facts are taken from the Plaintiff's complaint.  The Plaintiff injured his left knee on December 29, 2006, while he was housed at the Bellamy Creek Correctional Facility in Ionia, Michigan.  *Complaint*, ¶¶ 1-2. Two days later, he was seen by a nurse, who provided an Ace bandage wrap and a 24-hour ice detail.  Several days

-1-

later, the Plaintiff was seen by Dr. Holmes, who issued crutches, ordered a proper knee brace, and put him on a three-day ice detail with a "no work" restriction. Dr. Holmes also scheduled a follow-up appointment for two weeks later. *Id.* ¶ 3.

On March 7, 2007, Dr. Holmes requested a consult with an orthopedic surgeon to "rule out meniscal injury, ACL tear." Plaintiff alleges that Defendant CMS did not authorize the consult, but Dr. Ivens of CMS recommended a "new MRI to determine if surgical issue is present after latest injuries...." *Id* ¶ 4. Dr. Holmes then requested an MRI of the Plaintiff's left knee, which was performed by an orthopedic surgeon on April 25, 2007. *Id.* ¶ 6.

On June 5, 2007, Dr. Holmes again requested that Plaintiff be referred for an orthopedic consultation, but Plaintiff alleges that Dr. Mathai of CMS rejected that request on October 22, 2007. *Id.* ¶ 7. Dr. Holmes appealed CMS's decision, stating, "I think it's reasonable to get him into the orthopedist in that he really does appear to be dependent on the crutches, he's got two major problems with the left knee, ACL tear and now meniscal tear...." Nevertheless, Plaintiff alleges that Dr. Ivens, the CMS reviewer, denied an orthopedic consultation. *Id.* ¶ 8.

On March 5, 2008, Dr. Holmes again requested an orthopedic consultation, and this time Dr. Mathai approved the request, authorizing a consultive exam with Dr. Nirm Ikrim. *Id.* ¶ 10. Dr. Ikrim examined the Plaintiff on April 10, 2008, recommending a brace for six months, "partial menisclar debridement, and surgical replacement of the ACL in the left knee." *Id.* ¶ 11. Dr. Holmes requested that the surgery be performed, and on June 30, 2008, Dr. Ikram in fact performed arthroscopic surgery. Plaintiff states that the "MDOC did not want to pay for the major surgery, opting for the lesser costing arghroscopic procedure which had nothing to do with the ACL." He further states that

"rather than repairing the damaged ACL, it was debrided (severed)." *Id.* ¶¶ 12-13. The Plaintiff followed up with Dr. Ikrim on August 14, 2008, and was recommended three weeks of physical therapy. Plaintiff made "numerous visits" to the physical therapist. *Id*. ¶¶ 16, 18.

In the "Conclusion" section of his complaint, the Plaintiff challenges the decision to surgically debride, or sever, rather than repair the ACL of his right knee on June 30, 2008, characterizing this as the "gravamen of this complaint." *Id*. p.7.

In support of their Motion for Summary Judgment [Doc. #35], Defendants have submitted the Affidavit of Keith Ivens, M.D., as Exhibit B. Dr. Ivens states that "[a]s utilization review physician for CMS, I had only one encounter concerning requests for Plaintiff to receive medical care, including an orthopedic consultation, during the dates of the incidents in question." *Id*. ¶ 5. He goes on to state that on March 22, 2007, he recommended that Plaintiff receive an MRI to determine the necessity for an orthopedic consultation regarding his left knee, and that on April 11, 2007, he authorized Plaintiff to receive an MRI. *Id*. ¶¶ 6,7. Dr. Ivens states that after April 11, 2007, he was not asked to review any further requests for Plaintiff to receive medical care, and was never asked to review a request for Plaintiff to receive surgery on his left knee or an ACL replacement. *Id.* ¶¶ 8,9.

The affidavit of Bency Mathai, M.D. is submitted as Defendants' Exhibit C. Dr. Mathai states that during the dates in question, she "was involved with Plaintiff's medicalcare only as a utilization review physician, employed by [CMS]." *Mathai Affidavit*, ¶ 6. She states that she "had only two encounters concerning Plaintiff, on 10/22/2007 and 3/6/2008." *Id*. ¶ 7. As to October, 2007, she states, at ¶ 9:

> "On 10/22/07 I reviewed a request submitted by Plaintiff's medical service provider, Scott Holmes, M.D., on 6/5/2007 for Plaintiff to receive an

-3-

> Orthopedic consultation. I was unfamiliar with Plaintiff's medical condition therefore I requested additional information, in addition to what was provided, concerning Plaintiff in order to determine the medical necessity for an Orthopedic consultation. Therefore I requested Dr. Holmes to resubmit the request with additional supporting documentation."

Dr. Mathai states that she did not receive the information she requested from Dr. Holmes. *Id.* ¶ 10. However, on or about March 6, 2008, she "received a current request submitted by Plaintiff's medical service provider, Valorie Hammond, N.P., for Plaintiff to receive an Orthopedic surgery consultation and I approved the Orthopedic consultation requested." *Id.* ¶ 11. Dr. Mathai states that after March 6, 2008, she was not asked to review any further health care requests concerning the Plaintiff, and specifically was never asked "to review a request for Plaintiff to receive surgery on his left knee or an ACL replacement." *Id.* ¶¶ 12,13. She also states that she "never denied any request for Plaintiff to receive surgical repair of his meniscus or ACL recommended by his consulting Orthopedic Surgeon, Dr. Ikram." *Id.* ¶ 14.

Defendants have also submitted as Exhibit A (filed under seal) Plaintiff's medical records from January, 2007 to March, 2009. Those records support the affidavits of Dr. Ivens and Dr. Mathai. They show that on March 22, 2007, Dr. Ivens recommended an MRI "to determine if surgical issue is present," and that Dr. Ivens authorized the MRI of Plaintiff's left knee "s/p reinjury 2006 with hx of ACL tear." The records do not show that Dr. Ivens had any further involvement with Plaintiff's medical care.

The medical records also show that on October 22, 2007, Dr. Mathai requested additional information with regard to Plaintiff's request for an orthopedic consultation, and that on March 10, 2008, she "authorize[d] Dr. Ikram consult for left ACL tear and left

media meniscus tear."[1]  The records do not show that Dr. Mathai had any involvement in Plaintiff's health care after March 10, 2008.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the

---

[1] The records a date of March 10, 2008 for Dr. Mathai's authorization. This is not in material conflict with her affidavit, which indicates "on or about" March 6, 2008.

opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III. DISCUSSION

The Plaintiff's claims center on what he alleges was deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. More specifically, he describes the decision to surgically debride, or sever, rather than repair the ACL of his right knee on June 30, 2008 as the "gravamen" of his complaint.

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference

may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

First, the unrebutted evidence, including the medical records and affidavits submitted with Defendants' motion, shows that neither Dr. Ivens nor Dr. Mathai had any personal involvement with Plaintiff's surgery or with the decisions as to what type of procedure would be performed. Dr. Ivens merely authorized an MRI to determine the necessity for an orthopedic consultation in 2007. Dr. Mathai, after requesting additional medical information, approved Plaintiff's request for an orthopedic consultation in March of 2008. Neither Dr. Ivens nor Dr. Mathai had any further involvement with Plaintiff's treatment. The plaintiff in a § 1983 case must clearly show that a named defendant was personally involved in the allegations underlying the Complaint. *Rizzo v. Goode*, 423 U.S. 362, 372, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir. 1984). Mere failure to act does not amount to personal involvement. *Shehee v. Lutrell*e 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). Moreover, even being aware of an inmate's complaint and failing to take action does not create liability under § 1983. *Poe v. Haydon*, 853 F.2d 418,

429 (6th Cir. 1988).

Indeed, far from being deliberately indifferent to Plaintiff's medical needs, these Defendants were instead attentive to his requests, authorizing relevant tests and consultations.

Secondly, as discussed in my previous Report and Recommendation to dismiss Dr. Holmes and the MDOC [Doc. #21], Plaintiff's claim falters on the subjective prong of the deliberate indifference analysis. Even drawing all inferences in the Plaintiff's favor, and even assuming that Drs. Ivens and Mathai had sufficient personal involvement in the claim, it cannot be said that these Defendants disregarded Plaintiff's condition or placed him at substantial risk. As shown by the medical records, as well as Plaintiff's own admission, he was examined and treated numerous times for complaints regarding both knees. The treatment ranged from bandaging and ice regimens, to diagnostic testing such as MRI's, to two arthroscopic surgeries and physical therapy. While the Plaintiff might believe that surgical repair of the right ACL would have been preferable to the debriding performed by Dr. Ikram, this Court is not entitled to second-guess medical decisions as a matter of constitutional law. *Westlake, supra*. At best, Plaintiff might have a state law claim for medical malpractice. *Id.*; *Sanderfer v. Nichols, supra. See also Farmer v. Brennan, supra*, 114 S.Ct. at 1982-83 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted"). Under the constitutional standard, the test is not whether the Plaintiff received optimal care, but whether the medical providers were deliberately indifferent. They were not.[2]

---

[2] In an Opinion and Order dismissing the claims against Dr. Holmes and the MDOC [Doc. #25], Judge Battani stated:

Finally, CMS, which employed Drs. Ivens and Mathai, does not have liability under a *respondeat superior* theory. *Monell v. Department of Social Services of City of New York* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Supreme Court held that under § 1983, municipal or institutional liability is not unlimited, and that a municipality could not be liable on a theory of *respondeat superior*: "A municipality cannot be held liable *solely* because it employs a tortfeasor - - or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*, 436 U.S. at 691, 2036. (Emphasis in original). However, the *Monell* Court found that when the acts of individual employees represent the government's custom or policy, the municipality can be held liable. *Id* at 638, 2037-2038.

Of course, before a court even reaches the question of municipal liability, it must first be shown that there is an underlying constitutional violation. "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001)(citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)). As discussed above, Plaintiff has not made a sufficient showing that his Eighth Amendment rights were violated. Thus, CMS cannot be liable.

In addition, Plaintiff has offered nothing, beyond speculation, showing that CMS did not authorize ACL surgery "for the sole purpose of not having to bear the cost of the surgery," or that it had a policy to that effect. *Complaint*, p.8. I note that in its Opinion

---

"Furthermore, even if Plaintiff's disagreement could serve as the basis for a valid Eighth Amendment claim, his allegations do not establish that Defendants acted with a culpable subjective intent. Plaintiff had numerous appointments and was provided with a vast amount of medical advice. Additionally, Plaintiff was treated before surgery, and had surgery on both his left and right ACL. Plaintiff's allegation that Defendants were deliberately indifferent to his medical condition belies the record." *Id*. at 6.

and Order dismissing Defendant MDOC [Doc. #25], Judge Battani rejected a similar claim against the MDOC. Citing *Kelley v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) and *Winslow v. Prison Health Servs.*, 406 Fed.App'x 671, 674 (3rd Cir. 2011), the Court held, "To state an Eighth Amendment claim, a plaintiff must establish that a defendant performed a medical procedure for the purposes of cost savings *with knowledge that the procedure was ineffective*." *Opinion and Order* at 7 (emphasis in original). The Court further noted "that Plaintiff does not allege that Defendants knew that debridement of the ACL was an ineffective procedure." *Id*. For the same reasons, the claims against CMS must be dismissed.

Because these Defendants are clearly entitled to summary judgment, it is not necessary to discuss the issues raised in their motion to dismiss [Doc. #33], that is, whether the complaint should be dismissed under Fed.R.Civ.P. 12(b)(6)[3] or for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).[4]

---

[3] In any event, Rule 12(b) provides that if, on consideration of a motion under paragraph (6), "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 (summary judgment)."

[4] Where a complaint "fails to state a claim upon which relief can be granted...the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies." 42 U.S.C. § 1997e(c)(2). The Court may also deny an unexhausted claim on the merits not only under Rule 12(b)(6), but in the context of a summary judgment motion as well. *See Bowen v. Cady,* 2010 WL 148843 at *3 fn. 2 (E.D.Mich. 2010)("Although [§ 1997e(c)(2)] directly addresses a claim for relief that fails to state a claim on its face, it is equally applicable where the case has already progressed to the summary judgment stage"); *Carr v. Tousley,* 2009 WL 1514661, *16 (D.Idaho 2009) ("the court is not aware of any authority binding on this court which straightjackets the court into deciding the exhaustion question before the merits of the summary judgment motions"); *Gyekye v. Gilliam,* 2012 WL 1900927, *4 (S.D.Ohio 2012)("§ 1997(e) allows a court to dismiss a claim on the merits despite a prisoner's failure to exhaust his administrative remedies").

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Doc. #35] be GRANTED, and that the claims against Dr. Ivens, Dr. Mathai, and CMS be DISMISSED WITH PREJUDICE. I further recommend that Defendants' Motion to Dismiss [Doc. #33] be DENIED AS MOOT.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                         s/ R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

Date: August 31, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on August 31, 2012.

| | |
|---|---|
| Roberto Casanova, #241866<br>Gus Harrison Correctional Facility<br>2727 E Beecher St<br>Adrian, MI 49221-3506 | <u>Johnetta M. Curry-Williams</u><br>Case Manager |