UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERTO CASANOVA,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, ET AL.,

        Defendants.
_____/

CASE NO. 10-13950

HON. MARIANNE O. BATTANI

### OPINION AND ORDER REJECTING PLAINTIFF'S OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiff Robert Casanova's Objections (Doc. No. 49) to the Magistrate Judge's August 31, 2012, Report and Recommendation ("R&R"). In the R&R, the Magistrate Judge recommended that the Court grant Defendants Ivens, Mathai, and Correctional Medical Services' (CMS) Motion for Summary Judgment and Deny Defendants' Motion to Dismiss as moot. The Court has reviewed all of the relevant filings, and for the reasons that follow, the Court **REJECTS** Plaintiff's objections, **ADOPTS** the R&R, **GRANTS** Defendants' Motion for Summary Judgment, and **DENIES** as **MOOT** Defendant's Motion to Dismiss.

**I.      STATEMENT OF FACTS**

Plaintiff reinjured his left knee in December 2006 while he was incarcerated at the Bellamy Creek Correctional Facility. Several months later, on March 7, 2007, Dr. Scott Holmes, who was Casanova's medical service provider, requested a consult with an orthopedic surgeon to "rule out meniscal injury, ACL tear." (Doc. No. 1 at ¶ 4). Defendant CMS did not authorize the consult. (Id.)  Instead, Defendant Dr. Keith Ivens,

a "utilization review physician for CMS, denied Plaintiff's request for an orthopedic consultation, but recommended that Plaintiff receive an MRI to determine the necessity for an orthopedic consultation regarding his left knee. (Doc. No. 35, Exhibit B at ¶¶ 5-7). On April 11, 2007, Dr. Iven authorized Plaintiff to receive an MRI. (Id.)

The MRI took place on April 25, 2007. (Id. at ¶ 6). The MRI showed a torn anterior cruciate ligament ("ACL") and a horizontal tear of the left medial meniscus. (Id. at ¶ 6). Dr. Holmes again requested an orthopedic consultation. Defendant Dr. Bency Mathai, "a utilization review physician, employed by [CMS]," reviewed the request in October 2007. (Doc. No. 35 Exhibit C. at ¶ 6). Because Dr. Mathai was unfamiliar with Plaintiff's condition, she sought additional information, and instructed Dr. Homes to resubmit the request with additional supporting documentation. (Id. at ¶ 9).

In March 2008, Valorie Hammond, another medical service provider, submitted another request for a surgery consultation, which was approved. (Id. at ¶ 11). Thereafter, Dr. Nirm Ikram, an orthopedic specialist, examined Casanova on April 10, 2008, and recommended a brace for six months, "partial menisclar debridement, and surgical replacement of the ACL in the left knee." (Id. ¶ 11). The utilization review physician, Dr. Harriet Squier, reviewed the request and determined that the criteria for the ACL procedure was not met, however, she approved the request to repair Plaintiff's meniscus. (Doc. No. 36, Ex. A at 23-25). Consequently, on June 30, 2008, when Dr. Ikram performed surgery, he did not replace the ACL because CMS denied authorization for the procedure.

2

Plaintiff followed up with Dr. Ikrim on August 14, 2008, who recommended three weeks of physical therapy. Plaintiff made "numerous visits" to the physical therapist. (Id. at ¶¶ 16, 18).

Casanova challenges the decision to surgically debride rather than repair his ACL. Plaintiff states that the MDOC did not want to pay for the major surgery, and characterized the failure as the "gravamen" of his complaint. (Id. at p. 7). Casanova alleges that Defendants' denial of surgery recommended by Dr. Ikram forms the basis of Plaintiff's claim.

Upon review of the relevant filings, the Magistrate Judge reasoned that the unrebutted evidence shows that neither Dr. Ivens nor Dr. Mathai had any personal involvement with Plaintiff's surgery or with the decision as to what type of procedure would be performed. (See Doc. No. 48 at 7). Dr. Ivens authorized an MRI to determine the necessity of an orthopedic consultation, and Dr. Mathai approved the request for an orthopedic consultation. Because neither Defendant was personally involved in the allegations giving rise to the complaint, the Magistrate Judge recommended they be dismissed. (See Doc. No. 48 at 7). In the alternative, the Magistrate Judge concluded that neither Defendant was deliberately indifferent to Plaintiff's serious medical needs, (id. at p. 8), as the medical records demonstrate Casanova was treated on numerous occasions, and received diagnostic testing, surgery, and physical therapy. In addition, the Magistrate Judge recommended that CMS be dismissed because no constitutional violation occurred.

.

**II.   STANDARD OF REVIEW**

A district court must conduct a de novo review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. Id.

**III.   ANALYSIS**

Plaintiff challenges the R&R's analysis of the appropriateness of the medical treatment he received. Specifically, Plaintiff asserts that debridement of the ACL was not an appropriate medical treatment. Defendants are entitled to summary judgment for the reasons identified in the R&R: neither Dr. Ivens nor Dr. Mathai was involved in the decision to deny ACL replacement surgery; and Plaintiff's allegations do not establish an Eighth Amendment violation. See Williamson v. Goord, No. 9:02-00521 (N. D. New York July 11, 2006) (observing that a defendant's personal involvement in the alleged unlawful conduct is a prerequisite for finding liability in a § 1983 claim).

The Eighth Amendment's prohibition on cruel and unusual punishment requires the government to provide inmates with medical care. Estelle v. Gamble, 429 U.S. 97, 103 (1976). It "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." Jones v. Muskegon Cnty., 625 F.3d 935, 941 (6th Cir. 2010) (quoting Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004)). To succeed on his claim, Casanova must satisfy two elements, an objective one and a subjective one. Wilson v. Seiter, 501 U.S. 294, 300 (1991).

4

The objective element of a deliberate indifference claim is satisfied by a showing that the plaintiff had a serious medical need.  Id. at 297.  This prong is not in dispute.

The subjective element of a deliberate indifference claim requires a plaintiff to demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).  A culpable state of mind requires obduracy and wantonness, not mere inadvertence.  Gibson v. Foltz, 923 F.2d 851, 853 (6th Cir. 1992).  Accord Farmer v. Brennan, 511 U.S. 825, 835 (1994) (holding that official must know of and disregard an excessive risk to inmate health or safety)).

To support deliberate indifference, Casanova relies on the recommendation of the surgeon and the medical opinion of Dr. Steven R. Graboff, supplied as Exhibit E to Plaintiff's response to the motion to dismiss.  (Doc. No. 43).  Dr. Graboff offered an opinion based on information provided by Plaintiff's wife, not an examination of Casanova.  The doctor opines, "ACL tears like that. . .described in [Plaintiff] typically require ACT reconstruction and debridement is not an acceptable form of treatment."  (Id.)  Plaintiff's reliance on this opinion to make his case is misplaced.  Even a disagreement between doctors does not give rise to an Eighth Amendment claim of deliberate indifference.

Although Plaintiff would have liked his ACL repaired, MDOC's physicians ultimately decided that surgery would not be approved.  Dr. Ikram debrided the ACL, noting that Plaintiff's pain should be alleviated by the procedure performed.  (Doc. No. 36, at 30).  At a follow up visit with Dr. Ikram, Casanova indicated his left knee had been improving.  (Id. at 36).

5

Furthermore, even if Plaintiff's disagreement could serve as the basis for a valid Eight Amendment claim, his allegations do not establish that Defendants acted with a culpable subjective intent.  Defendants responded to Plaintiff's complaints, just not in the way he wished.  See Alexander v. Federal Bureau of Prisons, 227 F. Supp.2d 657, 666 (E.D. Ky 2002) (dismissing prisoner's Eighth Amendment claim based on the defendant's failure to order a specific type of surgery and citing cases dismissing complaints that a torn ACL was not being treated to suit the prisoner).  This is not a case where there was a total failure to give medical attention.  Plaintiff is not entitled to the best care money can buy, he is entitled to adequate care.  Even if prison officials factored cost into the course of treatment provided, the analysis does not change. Winslow v. Prison Health Servs., 406 F. App'x 671, 674 (3d Cir. 2011).  In sum, Prisoners are not entitled to "unqualified access to health care."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Because the facts, even viewed in the light most favorable to Plaintiff fail to establish a violation of his constitutional rights, CMS is entitled to summary judgment.

**IV.     CONCLUSION**

For the reasons stated above, the Court **DENIES** Plaintiff's objections, **ADOPTS** the R&R, and **GRANTS** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

                                           s/Marianne O. Battani
                                           MARIANNE O. BATTANI
                                           UNITED STATES DISTRICT JUDGE

DATE: September 26, 2012

## CERTIFICATE OF SERVICE

      I hereby certify that on the above date a copy of this Opinion and Order was served upon the Plaintiff via ordinary U.S. Mail and Counsel for the Defendant via the Court's ECF Filing System.

                                            <u>s/Bernadette M. Thebolt</u>
                                            Case Manager